UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-003-TBR-LLK

JEFFREY S. MAURER,                                                                                      PLAINTIFF

v.

SARAH JONES,                                                                                            DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff Jeffrey S. Maurer and Defendant Sarah Jones's competing motions for summary judgment. [R. 17; R. 18]. Plaintiff and Defendant each responded. [R. 19; R. 20]. Plaintiff and Defendant each replied. [R. 21; R. 22]. Fully briefed, this matter is now ripe for adjudication. For the reasons discussed below, Plaintiff Maurer's Motion for Summary Judgment, [R. 17], is GRANTED and Defendant Jones's Motion for Summary Judgment, [R. 18], is DENIED. An appropriate order shall issue separately from this Memorandum Opinion.

**BACKGROUND**

Plaintiff Maurer brings this suit to enforce a promissory note that resulted from settlement negotiations between Plaintiffs and Counterclaim Defendants C.A. Jones, Inc., Global Book Resellers, LLC, and Charles A. Jones and Defendants and Counterclaim Plaintiffs Mayson Capital partners, LLC, Jeffrey J. Maurer, Missouri Book Company, LLC, and PAJCO, Inc. [R. 17-4 at 1 (Settlement and Release Agreement).] Overall, the parties were involved in three cases: *In re Charles Anthony Jones*, Case No. 5:16-bk-50252 in the United States Bankruptcy Court for the Western District of Kentucky, *Mayson Capital Partners et al. v. Charles Anthony Jones*, Adversary No. 16-05012-ljf, also in the United States Bankruptcy Court for the Western District

of Kentucky, and *C.A. Jones, Inc., et al. v. Mayson Capital Partners, LLC, et al.*, Case No. 5:14-cv-174 in the United States District Court for the Western District of Kentucky.

According to the Settlement and Release Agreement ("Settlement Agreement"), Charles Jones agreed "to the entry of an Agreed Judgment against him in favor of Defendants in the amount of One Million One Hundred Thousand Dollars ($1.1 Million, or, the 'Debt') in the Bankruptcy Case" and the Defendants were not to execute on the Agreed Judgment "so long as Jones is in compliance with this Settlement Agreement and the Promissory Note." [R. 17-4 at 1.] The parties agreed to file an agreed judgment in the adversary proceeding and the bankruptcy case, as well as a joint motion to dismiss in the district court case. [*Id*.] Mr. Jones agreed to pay the $1.1 million debt by the sale of inventory and through a Promissory Note ("the Note") that was executed at the same time as the Settlement Agreement. [*Id*. at 2.] As a condition of the Defendants accepting the Promissory Note, the parties agreed that "Sarah Jones shall execute the Note as a co-maker." [*Id*.] At that time, Sarah Jones was the president and a shareholder of C.A. Jones, Inc., [R. 20-1 at 54 (Sarah Jones Depo.)], and the wife of Charles Jones, [*Id*. at 6]. Also, Mrs. Jones was the "buyer" for a gift shop owned by C.A. Jones, Inc. called Vintage Rose. [*Id*. at 15; 17-18.] The Settlement Agreement also contained a provision, titled "Mutual General Release," which stated:

> (a) Defendants, and their successors, assigns, heirs, beneficiaries, representatives, officers, directors, employees, agents, predecessors, attorneys or other legal representatives, affiliated companies, subsidiaries, insurers and reinsurers hereby release and forever discharge Plaintiffs and their successors, assigns, heirs, beneficiaries, representatives, officers, directors, employees, agents, predecessors, attorneys or other legal representatives, affiliated companies, subsidiaries, insurers and reinsurers and each of them from any and all known and unknown claims, obligations, damages, and liabilities of any nature whatsoever.
>
> (b) Plaintiffs, and their successors, assigns, heirs, beneficiaries, representatives, officers, directors, employees, agents, predecessors, attorneys or other legal

> representatives, affiliated companies, subsidiaries, insurers and reinsurers hereby release and forever discharge Defendants and their successors, assigns, heirs, beneficiaries, representatives, officers, directors, employees, agents, predecessors, attorneys or other legal representatives, affiliated companies, subsidiaries, insurers and reinsurers and each of them from any and all known and unknown claims, obligations, damages, and liabilities of any nature whatsoever.

[R. 17-4 at 2.] Mrs. Jones testified that she signed the Settlement Agreement on September 30, 2016 on behalf of C.A. Jones, Inc. as president. [R. 20-1 at 52-53.]

Mrs. Jones also signed the Note, in which she and Mr. Jones agreed to pay Jeffrey J. Maurer the principal sum of $1.1 million, with interest as calculated according to the terms of that Promissory Note. [R. 17-7 at 1, 5(Promissory Note); R. 20-1 at 49.] The Note states that it is "[f]or value received" and that it is "issued pursuant to, and is subject to all the terms and conditions of, that certain Settlement And Release Agreement in Case No. 5:14-cv-174, C.A. Jones., Global Book Resellers, LLC, and Charles A. Jones vs. Mayson Capital Partners, LLC, Jeffrey J. Maurer, Missouri Book Company, LLC, and Pajco, Inc. in the United States District Court for the Western District of Kentucky." [*Id*. at 1.] Maurer avers that several payments, amounting to $95,904.63, have been made to him pursuant to the Note. [R. 17-7 at 6-7, 13 (Maurer Affidavit).] However, Mrs. Jones testified that she did not make any of those payments. [R. 20-1 at 50.]

According to Maurer's calculations, including fees and interest, there is an outstanding balance on the Note of $1,299,604.71. [R. 17-7 at 13.] Maurer now brings this suit against Mrs. Jones to enforce the Note. Although Charles Jones also signed the Note, Maurer states that he has not added Charles Jones to this litigation because "the Consent Judgment already exists as an enforceable judgment against him." [R. 17-1 at 4 n.3 (Maurer Motion for Summary Judgment).]

3

Currently before the Court are Mrs. Jones and Maurer's competing motions for summary judgment. [*See generally* R. 17; R. 18.]

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

When the parties have filed competing motions for summary judgment, as is the case here, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Hensley v. Grassman*, 693 F.3d 681, 686 (6th Cir. 2012) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)). The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition,

answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

When considering arguments considering contract law, "[b]ecause we are sitting in diversity, we apply the law, including the choice of law rules, of the forum state." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008). In this case, the forum state is Kentucky,[1] so we must apply the law that Kentucky would apply when interpreting an agreement.

## DISCUSSION

Mrs. Jones makes several arguments as to why summary judgment should be granted in her favor. The Court will address each argument, as well as Maurer's assertions, in turn.

### A. Not a Party and Not Involved in Settlement

Mrs. Jones states that summary judgment should be granted in her favor because she was "not a party to or in any of the prior litigation," and she "never participated in the settlement negotiations or the lawsuits." [R. 20 at 2 (Jones Response).] Mrs. Jones cites no case law, nor is the Court aware of any applicable precedent, explaining why the Court should disregard her signature on the Settlement Agreement and the Note due to her absence "in the settlement negotiations or the lawsuits." Here, the contract that Maurer seeks to enforce, i.e., the Note, is clear on its face that Mrs. Jones, as wife of Charles Jones, agreed to the terms of the Note, i.e., to pay back a debt of $1.1 million to Maurer. *See, e.g., Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) ("Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence.") (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)). Moreover, in Kentucky, the parties that have signed as co-makers to a promissory note are "jointly and

---

[1] [*See* R. 17-4 at 3.]

severally liable to the holder even though the instrument contains no such express provision." *Schmuckie v. Alvey*, 758 S.W.2d 31, 33–34 (Ky. 1988). Thus, Mrs. Jones fails to convince the Court that summary judgment should be granted in her favor on the grounds of this particular argument.

### B. Conditions of the Agreement

In her Motion for Summary Judgment, Mrs. Jones contends that she never read the Note. [R. 18 at 3 (Jones Motion for Summary Judgment).] Her implication that this excuses her from the enforcement of the Note is misinformed. "It is the settled law in Kentucky that one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions, unless he is misled as to the nature of the writing which he signs or his signature has been obtained by fraud." *Hathaway v. Eckerle*, 336 S.W.3d 83, 89–90 (Ky. 2011) (quoting *Clark v. Brewer,* 329 S.W.2d 384, 387 (Ky. 1959)). As Mrs. Jones did not argue that she was misled or that her signature was obtained by fraud, this argument also fails.

### C. No Consideration

Mainly, Mrs. Jones argument in support of summary judgment in her favor centers around the idea that the Note was lacking in Consideration. [R. 18 at 3-4; R. 20 at 3-4.] Maurer disagrees. [17-1 at 5.] The Court will address each of their arguments in turn.

The three familiar elements required to be present for an enforceable contract to exist are as follows: an offer, an acceptance of the offer, and consideration. *See Cantrell Supply, Inc.*, 94 S.W.3d at 384. Consideration is defined as "[a] benefit to the party promising, or a loss or detriment to the party to whom the promise is made." *Phillips v. Phillips*, 171 S.W.2d 458, 464 (Ky. 1943). "Under Kentucky law, a duly executed note is presumed to be supported by

consideration. *Aspen Traditions, Inc. v. Kentucky Associated Gen. Contractors Self-Insurers' Fund*, No. 2009-CA-000733-MR, 2010 WL 3810643, at *3 (Ky. Ct. App. Oct. 1, 2010) (citing *Shrout's Adm'r v. Vaughan*, 204 S.W.2d 969, 970 (Ky. 1947)). The burden of overcoming the presumption falls on the party asserting a lack of consideration. *Id*; *see also* KRS 355.3-308(2)." *Commonwealth Land & Title Ins. Co. v. Howard*, No. CV 5:14-24-KKC, 2016 WL 1255719, at *3 (E.D. Ky. Mar. 29, 2016).

As an initial matter, the Court must address Mrs. Jones's argument that there is an unresolved issue of material fact as to whether Mrs. Jones "received valid consideration to support the Promissory Note." [R. 20 at 6.] Maurer responds that Mrs. Jones does not dispute the material facts of the case, rather, "she incorrectly argues the legal position that the facts do not demonstrate valuable consideration." [R. 21 at 1 (Maurer Reply).] Moreover, Maurer cites to the Kentucky Court of Appeals's finding that "[w]hat is a valuable consideration is a pure question of law." *Roush v. Vanceburg, S.L., T. & M. Tpk. Co.*, 85 S.W. 735, 736 (1905). Mrs. Jones cites to no case law in support of her claim that the question of consideration in this matter is a question of fact, and she brings no factual disputes to the attention of the Court besides the vague claim that "[w]hether a contractual obligation arose supported by consideration is an unresolved issue of material fact." [R. 20 at 5.] Furthermore, case law from within this circuit and the state of Kentucky shows that consideration has been decided by courts as a matter of law. *See, e.g., Commonwealth Land & Title Ins. Co.,* No. CV 5:14-24-KKC, 2016 WL 1255719, at *3 (finding that the promissory note involved was supported by adequate consideration); *Aspen Traditions, Inc.,* No. 2009-CA-000733-MR, 2010 WL 3810643, at *4 (affirming the lower court's finding that the contract did not fail for lack of consideration). Therefore, the Court will decide whether Mrs. Jones received valid consideration in support of the Note as a matter of law.

7

### 1. Mutual Release

Mrs. Jones argues that the Note lacked consideration because she acquired no benefit through the Note, either through payment or release of liability. [R. 18 at 3.] Maurer retorts that she did receive a benefit because, in exchange for signing the Note, she ensured that her company, her husband, and herself were released of all liability. [R. 21 at 3.] Specifically, Mrs. Jones argues that she, in her individual capacity, was not liable for any claim settled and resolved in the Settlement Agreement. [R. 20 at 3.] Therefore, any mutual release of liability agreed upon in the Settlement Agreement was of no benefit to her. [*Id*.] Maurer responds that the mutual release gave both a benefit to Mrs. Jones, as she could not be sued by Maurer as president of C.A. Jones, Inc., and a detriment to Mauer, as he gave up the right to sue Mrs. Jones. [R. 21 at 3.]

In Kentucky, the forbearance of the right to sue is valid consideration if the claim is asserted in good faith. *See Sanders v. Motorists Mut. Ins. Co.,* No. CIV. A. 3:08-37-DCR, 2010 WL 3634668, at *2 (E.D. Ky. Sept. 14, 2010) ("[F]orbearance of the right to sue can serve as valid consideration only where a valid claim might exist"); *Gibson Co. Real Estate v. Garrett, LLC*, No. 2011-CA-000065-MR, 2013 WL 4710325, at *3 (Ky. Ct. App. Aug. 30, 2013) ("[F]orbearance of a right to sue is valid consideration"); *Cook v. Cook*, 299 S.W.2d 261, 264 (Ky. Ct. App. 1957) ("[F]orbearance to sue is a good consideration for a promise founded thereon"). Furthermore, "good faith is enough unless the claim is so obviously unfounded that the assertion of good faith would affront the intelligence of the ordinary and reasonable layman." *Gibson Co. Real Estate*, No. 2011-CA-000065-MR, 2013 WL 4710325, at *4. Here, Maurer could have brought suit in good faith against Mrs. Jones as president of C.A. Jones, Inc. It would not "affront the intelligence of the ordinary and reasonable layman" for Maurer to attempt to

"pierce the corporate veil" by suing Mrs. Jones considering that she was one of two shareholders (the other being her husband) of the company and "at times" was listed as secretary and "at times" was listed as president. [R. 20-1 at 23.]

As for the benefit to the company, Maurer argues that one of the benefits received by Mrs. Jones through signing the Note was that it "allowed her business to settle a lawsuit." [R. 17-1 at 6.] As previously mentioned, at some point, Mrs. Jones was president of C.A. Jones, Inc., [R. 20-1 at 54], and C.A. Jones, Inc. owned Vintage Rose—the store where Mrs. Jones worked as a buyer, [*Id*. at 15; 17-18]. In response, Mrs. Jones argues that the benefit from the settlement to C.A. Jones, Inc. would have been "virtually non-existent" because the company had "very limited operations," consisting of owning and operating Vintage Rose, as well as owning some farmland. [R. 20 at 4.] As explained above, forbearance of the right to sue is valid consideration in Kentucky. *Gibson Co. Real Estate*, No. 2011-CA-000065-MR, 2013 WL 4710325, at *3. Mrs. Jones fails to cite any case law that contradicts this doctrine. Furthermore, the Court fails to see how C.A. Jones Inc.'s "limited operations" would negate the benefit it received from not being entangled in costly and time-consuming litigation. [2]

### 2. Benefit of a Finite Agreement

Maurer contends that another benefit received by Mrs. Jones as consideration was that the Note converted "a disputed claim and threat of execution into a finite agreement to pay over time . . . ." [R. 21 at 5.] As cited by Maurer in his Reply, the Kentucky Court of Appeals stated in

---

[2] The Court notes that there is further support for valid consideration for a promissory note in which a husband and wife sign as co-makers in several different treatises. For example, the section of Corpus Juris Secundum labelled "Join contracts—Promissory notes" states: "A married person who signs a promissory note as a co-obligor with knowledge that doing so will inure to the benefit of his or her spouse does not need to receive independent consideration for his or her execution to be deemed valid." FRANCIS C. AMENDOLA, ET AL., CORPUS JURIS SECUNDUM, § 63 (2018). Also, Lawrence's Anderson on the Uniform Commercial Code states: "It is not necessary that every one of the joint and severally liable comakers receive benefit from the transaction in order to satisfy the requirement of consideration." DAVID FRISCH, LAWRENCE'S ANDERSON ON THE UNIFORM COMMERCIAL CODE, § 3-408:15 (3d ed. 2017).

*Grass v. Akins* that the benefit of "a specific payment plan and more definite terms" provided in a release is valid consideration. 368 S.W.3d 150, 153 (Ky. Ct. App. 2012). In *Grass*, the plaintiff, Grass, entered an oral agreement with Akins to invest in a chiropractic office. *Id*. at *151. When the chiropractic office defaulted on the loan, Grass and his wife, who was not a party to the oral agreement, signed a "Mutual Release and Settlement Agreement" with Akins which "liquidated the outstanding balance owed under the oral agreement and specified a payment plan for the balance." *Id*. at 151–52. The court held that the Grasses received a benefit from the finite and specific terms of the release, and, therefore, the release did not lack consideration. *Id*. at 153. Similarly, Mr. and Mrs. Jones both benefit from a finite agreement to pay the debt owed to Maurer rather than a potential lawsuit resulting in an unknown settlement amount. Mrs. Jones provides no response, much less case law, to counter this argument.

### 3. Inducement to Settle

Maurer argues that the Note was further supported by consideration in that "Mrs. Jones signing the Note was part of the inducement to settle the case." [R. 21 at 4.] For support, Maurer cites to the case of *Smith v. Bethlehem Sand & Gravel Co., LLC*, in which the principal obligor of a debt argued that since the consideration between himself and the creditor had passed, the subsequent contract between the guarantor and the creditor lacked consideration. *See* 342 S.W.3d 288, 294 (Ky. Ct. App. 2011). Specifically, the plaintiff, Smith, signed a promissory note for a debt of $500,000 between Bethlehem Sand & Gravel Co., LLC and Brooks Sand & Gravel, LLC on behalf of Brooks as its president. *Id* at 290. Subsequently, Hollis signed a guaranty agreement that purported to hold him absolutely and unconditionally liable for the balance of the promissory note. *Id*. The guaranty agreement stated: "WHEREAS, Lender is unwilling to extend credit to Borrower unless the undersigned, HOLLIS SMITH (the "Guarantor"), shall guarantee

payment to Lender of the Obligations, as hereinafter defined . . ..." *Id* at 294. The court found the promissory agreement and the guaranty agreement to be part of the same action, and it held that "where the consideration between the principal obligor and the creditor has passed and become executed before the contract of the guarantor is made and the guaranty was part of the inducement to the creation of the original debt, such consideration is sufficient to the contract of the guarantor." *Id*.

Maurer contends that the same logic applies in this matter where the condition of Sarah Jones signing the Note, along with her husband, was part of the inducement for the creation of the settlement.[3] As in *Smith*, Maurer argues that such inducement is sufficient for the consideration of the Note. [R. 21 at 4.] Similar to *Smith*, the Settlement Agreement referenced Sarah Jones signing the Promissory Note as a condition of Maurer agreeing to settle on the calculated debt amount. [R. 17-4 at 2.] Although the current matter does not involve an issue of timing between the two agreements, the fact remains that the Kentucky court found that such "inducement to the creation of the original debt," as created in the Settlement Agreement, can serve as consideration for a related contract in which a party promises to pay the debt balance— here, the Note. *See Smith*, 342 S.W. 3d at 294. Thus, the Court finds the case applicable to the matter at hand.

Mrs. Jones offers little argument to contradict *Smith*'s application to this case. She attempts to distinguish the case by stating: "Here Sarah Jones did not know any terms of the 'Settlement and Release Agreement' or even the note. She never read them, never participated in the negotiations, just signed where Charles Jones said to. He was handling this matter." [R. 20 at 4.] As previously explained by the Court, "[i]t is the settled law in Kentucky that one who signs a

---

[3] The Settlement Agreement stated: "As a condition of Defendants accepting the Note, Sarah Jones shall execute the note as a co-maker. The Note shall bind both to pay the portion of the Debt that remains five (5) months after September 13, 2016 . . .." [R. 17-4 at 2.]

contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions, unless he is misled as to the nature of the writing which he signs or his signature has been obtained by fraud." *Hathaway*, 336 S.W.3d at 89–90. Thus, these arguments fail.

### 4. Proof of Consideration

Finally, Mrs. Jones argues that Maurer "has failed to present any evidence of consideration for the Promissory Note flowing to Defendant Sarah Jones sufficient to support a Summary Judgment." [R. 22 at 3 (Jones Reply).] Mrs. Jones cites several cases for the contention that federal and state courts in Kentucky require factual proof of consideration. [R. 22 at 3.] However, one of the cases cited by Mrs. Jones involves the same kind of factual proof provided in this case. In *Smith v. Bethlehem Sand & Gravel Co., LLC*, the defendant's supporting exhibits for the motion for summary judgment were its successful bankruptcy petition and the promissory note involved. *See Smith*, 342 S.W. 3d at 294. Similarly, Maurer has provided the Settlement Agreement, [R. 17-4], the Note, [R. 17-7], Charles Jones Bankruptcy Petition, in which he lists both Maurer and Mayson Capital as creditors of disputed claims, [R. 19-6], and other related documents such as the deposition of Mrs. Jones, [R. 17-3]. Furthermore, as explained above, the Court finds that Maurer has provided sufficient proof to support his arguments of mutual release, Mrs. Jones connection to C.A. Jones, Inc., the benefit of the finite agreement, and the inducement created to settle.

In sum, the Court finds that Mrs. Jones has not met her burden of overcoming the presumption that the Note was supported by consideration. In fact, the Court finds that Maurer has provided evidence of consideration supporting the Note through the mutual release, Mrs. Jones connection to C.A. Jones, Inc., the benefit of the finite agreement, and the inducement

created to settle. Therefore, the Court holds that the Note was supported by consideration. The record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and [Maurer] is entitled to judgment as a matter of law."

### D. Attorneys' Fees and the Amount Due

"Kentucky law follows the American Rule that attorneys' fees are not recoverable unless expressly provided for in statute or contract." *Moore v. Branch Banking & Tr. Co.*, No. 4:09-CV-00116-JHM, 2011 WL 873514, at *2 (W.D. Ky. Mar. 11, 2011) (citing *Dulworth & Burress Tobacco Warehouse Co. v. Burress*, 369 S.W.2d 129 (Ky. 1963)). "The reasonableness of an attorneys' fees award is a question of law for a trial court to decide 'when the attorney and/or client seeks to recover a reasonable attorney fee from an opposing or third party.'" *Pharmacy Corp. of Am. v. Concord Healthcare Grp., LLC*, No. 3:17-CV-00037-GNS, 2017 WL 3623803, at *5 (W.D. Ky. Aug. 23, 2017) (quoting *Inn–Grp. Mgmt. Servs., Inc. v. Greer*, 71 S.W.3d 125, 130 (Ky. 2002)). "The trial judge is generally in the best position to consider all relevant factors and require proof of reasonableness from" the party seeking attorneys' fees. *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991). "Ultimately, the question is whether that party has demonstrated that 'the amount sought is not excessive and accurately reflects the reasonable value of bona fide legal expenses incurred.'" *Pharmacy Corp. of Am.*, No. 3:17-CV-00037-GNS, 2017 WL 3623803, at *5 (quoting *Capitol Cadillac Olds, Inc.*, 813 S.W.2d at 293).

The Note states: "The Payor agrees to pay on demand, to the extent permitted by law, all costs and expenses incurred by the Payee in the enforcement of its rights in this Note and in any security therefor, including without limitation reasonable fees and expenses of the Payee's counsel." [R. 17-7 at 3.] Maurer has provided affidavits from his attorneys concerning their fees and expenses, which include detailed time records. [*See* R. 9; R. 10.] Mrs. Jones does not dispute

13

the payment of attorneys' fees and expenses incurred in enforcing the Note or the calculations of those amounts. The Court finds that the Note contains a valid provision for Maurer's recovery of attorney's fees and costs and Maurer is entitled to attorneys' fees and expenses in the amount of $17,522.57.

Also, Mrs. Jones does not dispute Maurer's calculation of a balance of $1,299,604.71 due on the Note. Furthermore, she does not dispute the 10% late charge and the 18% interest rate upon default, which the parties agreed to in the Note. [R. 17-7 at 2.] The Court finds that Maurer is entitled to the balance of $1,299,604.71 with a default interest rate of 18%.

## CONCLUSION

For the reasons stated herein, Plaintiff Maurer's Motion for Summary Judgment, [R. 17], is GRANTED and Defendant Jones's Motion for Summary Judgment, [R. 18], is DENIED. An appropriate order shall issue separately from this Memorandum Opinion.

cc: Counsel of Record